4/30/20
10:05 AM
W.B

Person/Attorney Filing: Roberto C Garcia
Mailing Address: 4801 E. Broadway Blvd. Suite 311
City, State, Zip Code: Tucson, AZ 85711
Phone Number: (520) 214-2000
E-Mail Address: rgarcia@farhangmedcoff.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 026246, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF PIMA

Mindy Stringer
Plaintiff(s),
v.
Sonora Behavioral Health Hospital,
LLC, et al.
Defendant(s).

Case No.  C20201353

**SUMMONS**

HON. LESLIE MILLER

To: Sonora Behavioral Health Hospital, LLC

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
   served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an
   Answer in writing with the Court, and you must pay the required filing fee. To file your
   Answer, take or send the papers to Clerk of the Superior Court, 110 West Congress
   Street, Tucson, Arizona 85701 or electronically file your Answer through one of Arizona's
   approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
   of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents
   in this case.

3. If this Summons and the other court papers were served on you within the State of
   Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
   date of service, not counting the day of service. If this Summons and the other court papers
   were served on you outside the State of Arizona, your Answer must be filed within
   THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
   service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  PIMA



SIGNED AND SEALED This Date: 3/18/2020

Gary Harrison
Clerk of the Superior Court

By:    JAMES R. ORR /s/
                    Deputy Clerk

AZturboCourt.gov Form Set #4425785

FILED
Gary Harrison
CLERK, SUPERIOR COURT

4/29/2020 2:49:13 PM

BY: STEPHANIE MAY /S/
DEPUTY

Case No. C20201353
HON. LESLIE MILLER

# FARHANG & MEDCOFF

### ━━━━━ ATTORNEYS ━━━━━

4801 East Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.214.2000
F: 520.214.2001

Roberto C. Garcia (#026246) (PAN 66152)
rgarcia@farhangmedcoff.com

David Tangren (#034527) (PAN 67127)
dtangren@farhangmedcoff.com

Attorneys for Plaintiff Mindy Stringer

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF PIMA

|  |  |
|---|---|
| MINDY STRINGER, an unmarried person,<br><br>Plaintiff,<br><br>v.<br><br>SONORA BEHAVIORAL HEALTH HOSPITAL, LLC, a Delaware limited liability company; and MICHAEL TACKE and JOHN/JANE DOE TACKE, a married couple,<br><br>Defendants. | Case No. C20201353<br><br><br>**FIRST AMENDED COMPLAINT**<br><br>(Assigned to Hon. Leslie Miller) |

Plaintiff Mindy Stringer, for her First Amended Complaint against Defendants, alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Mindy Stringer ("Stringer") is an unmarried person who resides in Pima County, Arizona.

2.      Defendant Sonora Behavioral Health Hospital, LLC ("SBH") is a Delaware limited liability company whose principal place of business is in Pima County, Arizona.

3.      Michael Tacke ("Tacke") is a married individual, who at all times relevant, resided in Pima County, Arizona.  At all times relevant, Tacke was married to John/Jane

00667002.2

1    Doe Tacke who is named as a Defendant herein for purposes of reaching community
2    property.  At all times relevant, Tacke acted for and on behalf of his marital community.
3    Tacke, John/Jane Doe Tacke, and their marital community, and each of them, are liable for
4    Tacke's conduct, as alleged herein.  SBH and Tacke are collectively referred to herein as
5    "Defendants".

6        4.      This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000e-5,
7    the Arizona Constitution, and Ariz. Rev. Stat. ("A.R.S.") § 12-123.

8        5.      Defendants operate and/or reside in Pima County, Arizona, and caused the
9    events giving rise to this lawsuit to occur in Pima County, Arizona.  Accordingly, venue is
10   proper in this Court pursuant to A.R.S. § 12-401.

**GENERAL ALLEGATIONS**

12       6.      Stringer is a registered nurse who began working for SBH in 2011.

13       7.      During her long tenure with SBH, Stringer performed various roles and
14   functions including, without limit, supervisor, mobile assessor, Interim Director of Nursing,
15   and Chief Nursing Officer ("CNO").

16       8.      Until interactions with Tacke starting in mid-2018, SBH considered Stringer
17   a model employee, and frequently called on her on to assist SBH during difficult staffing
18   or management situations.  SBH named Stringer its "employee of the month" on multiple
19   occasions and named her SBH's 2016 "employee of the year".

20       9.      In 2018, SBH promoted Stringer to the CNO position.  Her duties as CNO
21   included, without limit, properly implementing and adhering to SBH policy, as well as
22   adhering to applicable state and federal law.

23       10.     Stringer had multiple interactions with Tacke in which he displayed
24   inappropriate, discriminatory, and abusive behavior toward females.  Tacke's behavior, as
25   discussed further below, resulted in disparate and less favorable treatment of women and
26   was so severe and pervasive as to result in the creation of a hostile work environment.

27       11.     Stringer, in a professional manner and in keeping with her duties and
28   responsibilities, frequently attempted to explain to Tacke why his actions were

FARHANG & MEDCOFF
—— ATTORNEYS ——

00667002.2

- 2 -

1    inappropriate, violated SBH policy, and violated applicable law.

2        12.    Stringer's discussions with Tacke regarding his inappropriate behavior were

3    unavailing. Tacke continued to be harsh and unprofessional toward female SBH

4    employees. For example, on multiple occasions, Tacke yelled at female employees,

5    threatened them, and targeted them for harsh, undue criticism. Tacke did not behave this

6    way toward similarly situated males.

7        13.    In or around July 2018, Tacke physically restrained an adolescent patient,

8    despite not completing the required Handle with Care ("HWC") training. Stringer followed

9    up with Tacke after this incident, and with SBH Human Resources, about Tacke completing

10   the HWC training. Despite attempts to accommodate Tacke's schedule so he could

11   complete the training, Tacke never completed the training, and he expressed frustration at

12   Stringer's attempts to have him comply with the law and SBH's policies.

13       14.    In juxtaposition, when similarly situated male employees attempted to

14   address issues with Tacke, whether minor or major, Tacke was responsive to same and acted

15   in a friendly manner toward them.

16       15.    On or about July 21, 2018, a male, registered nurse supervisor spoke to

17   Stringer about a conversation he recently had with Tacke. This employee relayed that Tacke

18   was bragging to other male employees about how Tacke became so angry and irate during

19   a phone call with a female employee that Tacke's wife made a recording of it. Tacke then

20   showed this recording to various male employees and joked about how he became so

21   threatening and irrational. This male employee was concerned that Tacke might hurt an

22   SBH patient or employee. Such conduct toward women was not novel, either to Stringer

23   or SBH including its human resources personnel.

24       16.    In or around August 2018, Tacke appointed Dan Krepps ("Krepps"), a male,

25   to the position of Director of Clinical Services. Almost immediately, Krepps fell out of

26   compliance with SBH policy and applicable legal requirements. He failed to follow

27   regulatory standards, failed to produce appropriate clinical documentation, and failed to

28   participate in scheduled clinical groups (for which SBH billed Medicare, Medicaid, and

FARHANG & MEDCOFF
——— ATTORNEYS ———

00667002.2

- 3 -

1    other insurers).

2       17.    Stringer voiced concerns regarding Krepps' deficiencies to both Tacke and

3    Carla Carpentier, a human resources manager at SBH ("Carpentier"), but no action was

4    taken to correct the deficiencies, discipline Krepps, or to have him meet the expectations of

5    his position. Defendants refused to resolve such issues because Krepps is male, and because

6    of Defendants' strong preference for males in leadership roles and strong dislike of females

7    in same.

8       18.    In juxtaposition, when any female SBH employee fell short of expectations

9    or was even suspected of being out of compliance, Tacke yelled and cursed at them in front

10   colleagues and, as he often did, would have used his power as CEO to belittle and

11   intimidate.

12       19.    In or around September 2018, Tacke, still not having completed the HWC

13   training, was present in SBH's Madera unit. A young female patient was experiencing

14   psychosis, and her doctor ordered an injection be given. A female nurse began to educate

15   the patient on the medication and prepared to deliver the injection. Tacke, directly

16   contradicting and undermining SBH's medical staff, informed the patient that she would

17   not need the injection. Tacke then ordered the female nurse not to give the injection to the

18   patient. Stringer attempted to discuss with Tacke the need to execute the doctor's orders,

19   to which Tacke responded angrily "[t]his is my hospital!"

20       20.    In juxtaposition, when similarly situated males recommended a course of

21   action to Tacke, he usually followed their professional advice.

22       21.    In or around September 2018, Tacke had window blinds installed in his office.

23   He stated the reason for installing the blinds was that he "[didn't] want people seeing me

24   getting it on in the middle of the night." Tacke stayed at SBH on multiple nights in and

25   around this time, for no apparent business reason, and regularly bragged about being hung

26   over when at work.

27       22.    In and around early October 2018, Tacke angrily screamed at a female

28   registered nurse for assigning a patient to a particular physician (as she was instructed to

FARHANG & MEDCOFF
——— ATTORNEYS ———

00667002.2

- 4 -

do).  Soon thereafter, Tacke himself admitted he had crossed the line with this RN and that he should apologize.  Seizing the opportunity to address Tacke's consistent improper behavior toward women, Stringer and another SBH female employee indicated to Tacke that his behavior was abusive, wholly inappropriate, and violated SBH policy and applicable law.  Tacke, however, never apologized to this RN and held such statements against Stringer and the other employee (whose employment with SBH also ended because of the conduct of Tacke complained of herein).  To Stringer's knowledge, Tacke never treated male employees in the way that he treated this RN, or women in general.

23.     On or about October 23, 2018, Tacke called Stringer into his office, and while visibly angry, gave her a write up, based on a nurse under Stringer's supervision allegedly reporting inaccurate patient census data from the night of October 21, 2018.  Stringer looked up the census data from October 21 and found it was in fact, correct.  Stringer asked Tacke why a write up was appropriate when the census data was in fact accurate.  Tacke interrupted Stringer, violently slammed his hand on his desk and yelled "I fucking told you" in response to Stringer's question.

24.     Tacke then stood up from his desk and assumed a threatening posture. Stringer was frightened by this and believed Tacke was going to hit her.  Tacke reached for a bullet cartridge from his desk (which he often used as a prop to intimidate insubordinates; Tacke claimed the bullet had been collected from a pile of dead bodies by a friend in the military, suggesting that those who disagreed with Tacke would be in his crosshairs) and held it in his hands as gesture of intimidation.  Out of fear and duress based on Tacke's shocking and abusive behavior, Stringer signed the write up and left his office as quickly as possible.

25.     Stringer is aware that other female SBH employees had similar interactions with Tacke.  Stringer believes no male SBH employees had similar interactions with Tacke.

26.     On or about October 24, 2018, Tacke stated he did not want to work on corrective action processes with four female SBH employees because they were, among other things, "old and slow" women.

FARHANG & MEDCOFF
ATTORNEYS

27.    In juxtaposition, Tacke was supportive of male employees and would give them various opportunities to correct deficiencies and improve.

28.    On or about October 25, 2018, in a stunning change of behavior, Tacke told Stringer he would recommend her for a CEO-in Training Program.  Stringer deserved such an opportunity based on her exemplary work performance, but she remained baffled by Tacke's erratic and often hostile behavior towards her and other women.

29.    On or about October 26, 2018, Tacke walked into Stringer's office area and loudly, in front of others, asked "[i]s there a [name withheld] that works at night? There's a rumor going around that I was fucking [name withheld], and that [name withheld] said so." Rather than allowing human resources to handle the situation, Tacke then personally confronted/scolded [name withheld] (a then-SBH employee, female, and alleged purveyor of the rumor).

30.    Later that day, in a crude and failed attempt to be humorous, Tacke stated that "I'd never want anyone to think I was fucking [name withheld]."  Tacke's statement was meant to demean [name withheld], her physical appearance, and women in general.

31.    On or about October 29, 2018, while Stringer was at a doctor's appointment, Tacke held a staff meeting, where he stated that there were rumors going around about him, that SBH had a toxic culture, and that people were going to get "fucking fired." Later that same day, Carpentier asked Stringer if she was aware of any rumors persisting at the time regarding Tacke, to which Stringer replied she had not been until Tacke raised the issue a few days back. Critically, Stringer indicated to Carpentier that she hoped the rumors were not true and that, if they were, such conduct was wholly inappropriate and illegal.

32.    Later that same day, members of the nighttime nursing staff approached Stringer and told her they had recently heard "sex noises" coming from Tacke's office. When two members of the staff had gone to investigate, they saw Tacke and a female SBH employee leaving Tacke's office around 2 a.m. looking "disheveled."

33.    On or about October 30, 2018, an SBH employee spoke with Stringer and warned her that Tacke was "intimidated" by her and that Tacke did not like that he could

FARHANG & MEDCOFF
——— ATTORNEYS ———

1  not make Stringer, a woman, cry.  This employee warned Stringer that Tacke would

2  continue to try to damage Stringer, assert his dominance over her because she is female,

3  and try to make her cry.  Stringer is not aware of any such interactions or intentions directed

4  at similarly situated male employees.

5      34.    On or about October 31, 2018, Tacke called Stringer into his office.

6  Carpentier was present and Tacke stated he wanted to discuss the write up Stringer received

7  on October 23.  Tacke blamed Stringer for another allegedly incorrect patient census taken

8  after October 23.  Tacke then terminated Stringer's employment.  When Stringer offered

9  options other than termination, Tacke declined, stating that Stringer was "contributing to a

10  toxic culture", which was untrue.

11      35.    Throughout his tenure as CEO of SBH, Tacke has personally directed the

12  termination of at least 7 women.  During that period, Tacke has not terminated the

13  employment of any men, including those who have committed acts deserving of such

14  treatment.

15      36.    Tacke's termination of Stringer's employment was in retaliation for her

16  consistent efforts, throughout her interactions with Tacke, to redirect him and to bring him

17  into compliance with SBH policies and law including with regard to his treatment of

18  women.  In acting as complained of herein and as may be further discovered through this

19  litigation, in retaliating against Stringer, Tacke acted purposefully, with malice, and with

20  an evil hand guided by an evil mind to damage Stringer.

21      37.    At all times relevant, Carpentier and SBH were aware of Tacke's improper,

22  unprofessional conduct and his poor treatment of women.  Carpentier observed such

23  conduct herself and had such conduct reported to her by various women.  Stringer

24  understands Carpentier tried to make changes or improvements, but was purposefully

25  thwarted by SBH, despite its knowledge of Tacke's conduct.

26      38.    On or about November 21, 2018, Stringer received several text messages from

27  SBH's former Director of Nursing, Corey Glasford ("Glasford"), who was attempting to

28  obtain information regarding Tacke's rumored sexual interactions with another SBH

FARHANG & MEDCOFF
ATTORNEYS

00667002.2

- 7 -

1   employee. Glasford noted that Tacke blamed Stringer for such rumors and that Tacke said
2   Stringer brought toxicity to the SBH workplace.

3       39.    Tacke, in his capacity as SBH's CEO, made these comments not only to
4   defame Stringer, damage her professional reputation, and prevent her from securing
5   potential employment with Glasford, he did so in retaliation for Stringer's opposition to
6   Tacke's unlawful conduct.

7       40.    Upon information and belief, Tacke, in his capacity as SBH's CEO, made
8   similar defamatory comments to other third parties and made it very difficult, if not
9   impossible, for Stringer to mitigate her damages.

10                **COUNT I – VIOLATION OF TITLE VII/ACRA**

11                            (Against SBH)

12      41.    Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, et
13  seq. ("Title VII"), makes it an unlawful employment practice under federal law for an
14  employer to discriminate against any individual with respect to compensation, terms,
15  conditions, or privileges of employment, because of such individual's race, color, religion,
16  sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Similarly, the Arizona Civil Rights Act,
17  codified at A.R.S. § 41-1461, et seq. (the "ACRA"), also makes the foregoing unlawful
18  under Arizona law.

19      42.    Defendants' conduct complained of herein violates both Title VII and the
20  ACRA.

21      43.    Stringer is female and thus a member of a protected class under Title VII and
22  the ACRA due to her sex.

23      44.    Stringer was an excellent employee, whom Tacke stated he would
24  recommend for a CEO training program less than a week prior to the termination of her
25  employment.

26      45.    Tacke terminated Stringer's employment Plaintiff because of his animosity
27  towards women, especially women in positions of power who attempted to reign in Tacke's
28  eccentric and inappropriate behavior. This termination occurred despite Plaintiff's

FARHANG & MEDCOFF
—— ATTORNEYS ——

00667002.2
                                    - 8 -

1     exemplary employment and performance record.

2          46.     As set forth in further detail elsewhere herein, Tacke and SBH treated Stringer

3     and women in general far worse than similarly situated male employees.

4          47.     Tacke, a CEO who regularly flouts both SBH policy and applicable law, has

5     had the continued and unwavering support of SBH because he is male (as do other similarly

6     situated males), while high-performing management or supervisory-level female

7     employees, such as Stringer, are harshly disciplined and considered disposable.

8          48.     Stringer subjectively perceived her workplace environment to be offensive,

9     hostile, and abusive, and any objective, reasonable person would agree.

10         49.     The sexually hostile work environment Stringer was exposed to was

11    permeated with discriminatory intimidation and sexual overtones, was intolerable, and

12    severe.  The hostile acts and environment Stringer faced were so pervasive, indeed she felt

13    their effects on a daily basis, such that Stringer's conditions of employment were negatively

14    altered, and such that any reasonable person would consider same abusive and utterly

15    unacceptable.

16         50.     Tacke berated women, denigrated them for their age and appearance, applied

17    higher standards to them, and physically intimidated them.  This abusive behavior was both

18    severe and pervasive.

19         51.     The discrimination Stringer and other women faced because of their sex was

20    purposeful, calculated, and intended to keep Stringer from advancing or enjoying a peaceful

21    and welcoming work environment.

22         52.     Defendants' unlawful treatment of Stringer caused her significant damage in

23    an amount to be proven at trial.  Stinger is entitled to all damages recoverable under Title

24    VII and the ACRA including, without limit, those damages arising from wages and benefits

25    not paid for discriminatory reasons, emotional distress and mental anguish, inconvenience,

26    plus interest thereon, and attorneys' fees and costs incurred herein and otherwise incurred

27    by Stringer in seeking to vindicate her rights.

28         53.     Defendants' unlawful treatment of Stringer was gross, wanton, malicious,

FARHANG & MEDCOFF
——— ATTORNEYS ———

00667002.2

- 9 -

1   oppressive, and done with spite, ill will, and reckless indifference to Stringer's protected
2   rights. Further, Defendants' conduct evinces an evil hand guided by an evil mind. As a
3   result, Defendants are liable to Stringer for punitive damages, in addition to all other
4   damages, in an amount to be proven at trial.

5   54.   Stringer satisfied all legal requirements, including the administrative
6   processes required under federal and state law, to bring these claims.

### COUNT II – RETALIATION IN VIOLATION OF TITLE VII/ACRA

(Against SBH)

9   55.   Stringer incorporates herein by this reference each and every preceding
10  allegation as if fully set forth herein.

11  56.   Stringer complained to SBH, through Carpentier, regarding Tacke's improper
12  treatment of women, his discrimination against women, and the hostile work environment
13  he created for women.

14  57.   Stringer complained to Tacke himself that his conduct toward and treatment
15  of women was improper and unlawful.

16  58.   Stringer's complaints to SBH, Tacke, and Carpentier were activity protected
17  under law, including under Title VII and the ACRA.

18  59.   SBH and Tacke retaliated against Stringer because she engaged in the
19  protected activity intended to vindicate her rights, and those of other females, under law
20  including under Title VII and the ACRA.

21  60.   SBH and Tacke retaliated against Stringer as set forth elsewhere herein
22  including, without limit, by terminating her employment and defaming her to third parties.

23  61.   Defendants' unlawful treatment of Stringer caused her significant damage in
24  an amount to be proven at trial. Stinger is entitled to all damages recoverable under title
25  VII and the ACRA for retaliation including, without limit, those damages arising from
26  wages and benefits not paid for discriminatory reasons, emotional distress and mental
27  anguish, inconvenience, plus interest thereon, and attorneys' fees and costs incurred herein
28  and otherwise incurred by Stringer in seeking to vindicate her rights.

FARHANG & MEDCOFF
ATTORNEYS

00667002.2

- 10 -

62. Defendants' unlawful treatment of Stringer was gross, wanton, malicious, oppressive, and done with spite, ill will, and reckless indifference to Stringer's protected rights. Further, Defendants' conduct evinces an evil hand guided by an evil mind. As a result, SBH is liable to Stringer for punitive damages, in addition to all other damages, in an amount to be proven at trial.

63. Stringer satisfied all legal requirements, including the administrative processes required under state law, to bring these claims.

### COUNT III – DEFAMATION

(Against all Defendants)

64. Stringer incorporates herein by this reference each and every preceding allegation as if fully set forth herein.

65. Tacke, acting in his capacity as SBH's CEO, made untrue, defamatory statements regarding Stringer to various third parties.

66. For example, Tacke defamed Stringer when he falsely indicated to third parties that she was unprofessional and/or when he indicated that Stringer had started and/or perpetuated unsavory rumors. All comments, known and unknown to Stringer at this time, made by Tacke that reflected negatively upon Stringer were either false, made with reckless disregard for their falsity, and or were negligent.

67. Tacke's false representations/publications regarding Stringer severely damaged her reputation and goodwill in the community. For example, Tacke's comments made it difficult, if not impossible, for Stringer to obtain employment financially comparable to her employment with SBH. Further, such comments made it difficult for Stringer to obtain immediate employment.

68. Tacke's/SBH's defamation of Stringer was done with ill-will, spite, and malice such that an award of punitive damages against Defendants is appropriate.

### REQUESTED RELIEF

**WHEREFORE**, Stringer respectfully requests that the Court:

a) Enter judgment for Stringer and against Defendants on all counts;

FARHANG & MEDCOFF
—— ATTORNEYS ——

00667002.2

- 11 -

b)    Award Stringer all recoverable damages, in an amount to be proven at trial;

c)    Award Stringer her taxable costs and reasonable attorneys' fees incurred during her efforts to resolve these disputes prior to filing this lawsuit, and such costs and attorneys' fees incurred herein, pursuant to 42 U.S.C. § 2000e-5(k), A.R.S. § 41-1481(J) and any other applicable legal right/provision;

d)    Award Stringer punitive and/or exemplary damages on all claims under which such damages are available under law in an amount to be determined at trial;

e)    Award Stringer pre- and post-judgment interest at the highest rate allowed by law; and

f)    Grant Stringer any other relief that the Court deems just and proper under circumstances.

DATED this 29th day of April 2020.

FARHANG & MEDCOFF

By /s/Roberto C. Garcia
    Roberto C. Garcia
    David M. Tangren
    Attorneys for Plaintiff

FARHANG & MEDCOFF
— ATTORNEYS —

00667002.2

- 12 -

PERSON/ATTORNEY FILING: Roberto C Garcia
MAILING ADDRESS: 4801 E. Broadway Blvd. Suite 311
CITY, STATE, ZIP CODE: Tucson, AZ 85711
PHONE NUMBER: (520) 214-2000
E-MAIL ADDRESS: rgarcia@farhangmedcoff.com
[ ☐ ] REPRESENTING SELF, WITHOUT AN ATTORNEY
(IF ATTORNEY) STATE BAR NUMBER: 026246, Issuing State: AZ

FILED
Gary Harrison
CLERK, SUPERIOR COURT
3/17/2020 5:30:23 PM
BY: JAMES R. ORR /S/
DEPUTY

Case No. C20201353
HON. LESLIE MILLER

## ARIZONA SUPERIOR COURT, PIMA COUNTY

Mindy Stringer
Plaintiff(s),

V.

Sonora Behavioral Health Hospital,
LLC, et al.
Defendant(s).

CASE NO: _____

**RULE 102(a) FASTAR CERTIFICATE**

The undersigned certifies that he or she knows the eligibility criteria set by FASTAR Rule 101(b)

and certifies that this case:

## (NOTE – YOU MUST CHECK ONE OF THE BOXES BELOW OR THE CLERK WILL NOT ACCEPT THIS FORM.)

☐ **DOES** meet the eligibility criteria established by Rule 101(b); or

☒ **DOES NOT** meet the eligibility criteria established by Rule 101(b).

Dated: _____

Roberto C Garcia /s/ _____
SIGNATURE

Person/Attorney Filing: Roberto C Garcia
Mailing Address: 4801 E. Broadway Blvd. Suite 311
City, State, Zip Code: Tucson, AZ 85711
Phone Number: (520) 214-2000
E-Mail Address: rgarcia@farhangmedcoff.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 026246, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF PIMA

Mindy Stringer
Plaintiff(s),

v.

Sonora Behavioral Health Hospital,
LLC, et al.
Defendant(s).

Case No.  C20201353

**SUMMONS**

HON. LESLIE MILLER

To: Michael Tacke

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 110 West Congress Street, Tucson, Arizona 85701 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efinginformation.</u>
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  PIMA



SIGNED AND SEALED This Date: 3/18/2020

Gary Harrison
Clerk of the Superior Court

By:    JAMES R. ORR /s/
                    Deputy Clerk

AZturboCourt.gov Form Set 8442B785

2

FILED
Gary Harrison
CLERK, SUPERIOR COURT

4/29/2020 2:49:13 PM

BY: STEPHANIE MAY /S/
DEPUTY

Case No. C20201353
HON. LESLIE MILLER

# FARHANG & MEDCOFF

## ———— ATTORNEYS ————

4801 East Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.214.2000
F: 520.214.2001

Roberto C. Garcia (#026246) (PAN 66152)
rgarcia@farhangmedcoff.com

David Tangren (#034527) (PAN 67127)
dtangren@farhangmedcoff.com

Attorneys for Plaintiff Mindy Stringer

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| MINDY STRINGER, an unmarried person,<br><br>        Plaintiff,<br><br>    v.<br><br>SONORA BEHAVIORAL HEALTH HOSPITAL, LLC, a Delaware limited liability company; and MICHAEL TACKE and JOHN/JANE DOE TACKE, a married couple,<br><br>        Defendants. | Case No. C20201353<br><br>**FIRST AMENDED COMPLAINT**<br><br>(Assigned to Hon. Leslie Miller) |

Plaintiff Mindy Stringer, for her First Amended Complaint against Defendants, alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Mindy Stringer ("Stringer") is an unmarried person who resides in Pima County, Arizona.

2.     Defendant Sonora Behavioral Health Hospital, LLC ("SBH") is a Delaware limited liability company whose principal place of business is in Pima County, Arizona.

3.     Michael Tacke ("Tacke") is a married individual, who at all times relevant, resided in Pima County, Arizona.  At all times relevant, Tacke was married to John/Jane

FARHANG & MEDCOFF
——— ATTORNEYS ———

1   Doe Tacke who is named as a Defendant herein for purposes of reaching community
2   property.  At all times relevant, Tacke acted for and on behalf of his marital community.
3   Tacke, John/Jane Doe Tacke, and their marital community, and each of them, are liable for
4   Tacke's conduct, as alleged herein.  SBH and Tacke are collectively referred to herein as
5   "Defendants".

6       4.      This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000e-5,
7   the Arizona Constitution, and Ariz. Rev. Stat. ("A.R.S.") § 12-123.

8       5.      Defendants operate and/or reside in Pima County, Arizona, and caused the
9   events giving rise to this lawsuit to occur in Pima County, Arizona.  Accordingly, venue is
10  proper in this Court pursuant to A.R.S. § 12-401.

11  <u>**GENERAL ALLEGATIONS**</u>

12      6.      Stringer is a registered nurse who began working for SBH in 2011.

13      7.      During her long tenure with SBH, Stringer performed various roles and
14  functions including, without limit, supervisor, mobile assessor, Interim Director of Nursing,
15  and Chief Nursing Officer ("CNO").

16      8.      Until interactions with Tacke starting in mid-2018, SBH considered Stringer
17  a model employee, and frequently called on her on to assist SBH during difficult staffing
18  or management situations.  SBH named Stringer its "employee of the month" on multiple
19  occasions and named her SBH's 2016 "employee of the year".

20      9.      In 2018, SBH promoted Stringer to the CNO position.  Her duties as CNO
21  included, without limit, properly implementing and adhering to SBH policy, as well as
22  adhering to applicable state and federal law.

23      10.     Stringer had multiple interactions with Tacke in which he displayed
24  inappropriate, discriminatory, and abusive behavior toward females.  Tacke's behavior, as
25  discussed further below, resulted in disparate and less favorable treatment of women and
26  was so severe and pervasive as to result in the creation of a hostile work environment.

27      11.     Stringer, in a professional manner and in keeping with her duties and
28  responsibilities, frequently attempted to explain to Tacke why his actions were

FARHANG & MEDCOFF
——— ATTORNEYS ———

00667002.2

- 2 -

1   inappropriate, violated SBH policy, and violated applicable law.

2       12.   Stringer's discussions with Tacke regarding his inappropriate behavior were

3   unavailing.   Tacke continued to be harsh and unprofessional toward female SBH

4   employees.   For example, on multiple occasions, Tacke yelled at female employees,

5   threatened them, and targeted them for harsh, undue criticism.   Tacke did not behave this

6   way toward similarly situated males.

7       13.   In or around July 2018, Tacke physically restrained an adolescent patient,

8   despite not completing the required Handle with Care ("HWC") training.   Stringer followed

9   up with Tacke after this incident, and with SBH Human Resources, about Tacke completing

10  the HWC training.   Despite attempts to accommodate Tacke's schedule so he could

11  complete the training, Tacke never completed the training, and he expressed frustration at

12  Stringer's attempts to have him comply with the law and SBH's policies.

13      14.   In juxtaposition, when similarly situated male employees attempted to

14  address issues with Tacke, whether minor or major, Tacke was responsive to same and acted

15  in a friendly manner toward them.

16      15.   On or about July 21, 2018, a male, registered nurse supervisor spoke to

17  Stringer about a conversation he recently had with Tacke. This employee relayed that Tacke

18  was bragging to other male employees about how Tacke became so angry and irate during

19  a phone call with a female employee that Tacke's wife made a recording of it.   Tacke then

20  showed this recording to various male employees and joked about how he became so

21  threatening and irrational.   This male employee was concerned that Tacke might hurt an

22  SBH patient or employee.   Such conduct toward women was not novel, either to Stringer

23  or SBH including its human resources personnel.

24      16.   In or around August 2018, Tacke appointed Dan Krepps ("Krepps"), a male,

25  to the position of Director of Clinical Services.   Almost immediately, Krepps fell out of

26  compliance with SBH policy and applicable legal requirements.   He failed to follow

27  regulatory standards, failed to produce appropriate clinical documentation, and failed to

28  participate in scheduled clinical groups (for which SBH billed Medicare, Medicaid, and

FARHANG & MEDCOFF
—— ATTORNEYS ——

00667002.2

- 3 -

1   other insurers).

2      17.   Stringer voiced concerns regarding Krepps' deficiencies to both Tacke and

3   Carla Carpentier, a human resources manager at SBH ("Carpentier"), but no action was

4   taken to correct the deficiencies, discipline Krepps, or to have him meet the expectations of

5   his position.  Defendants refused to resolve such issues because Krepps is male, and because

6   of Defendants' strong preference for males in leadership roles and strong dislike of females

7   in same.

8      18.   In juxtaposition, when any female SBH employee fell short of expectations

9   or was even suspected of being out of compliance, Tacke yelled and cursed at them in front

10  colleagues and, as he often did, would have used his power as CEO to belittle and

11  intimidate.

12     19.   In or around September 2018, Tacke, still not having completed the HWC

13  training, was present in SBH's Madera unit.  A young female patient was experiencing

14  psychosis, and her doctor ordered an injection be given.  A female nurse began to educate

15  the patient on the medication and prepared to deliver the injection.  Tacke, directly

16  contradicting and undermining SBH's medical staff, informed the patient that she would

17  not need the injection.  Tacke then ordered the female nurse not to give the injection to the

18  patient.  Stringer attempted to discuss with Tacke the need to execute the doctor's orders,

19  to which Tacke responded angrily "[t]his is my hospital!"

20     20.   In juxtaposition, when similarly situated males recommended a course of

21  action to Tacke, he usually followed their professional advice.

22     21.   In or around September 2018, Tacke had window blinds installed in his office.

23  He stated the reason for installing the blinds was that he "[didn't] want people seeing me

24  getting it on in the middle of the night."  Tacke stayed at SBH on multiple nights in and

25  around this time, for no apparent business reason, and regularly bragged about being hung

26  over when at work.

27     22.   In and around early October 2018, Tacke angrily screamed at a female

28  registered nurse for assigning a patient to a particular physician (as she was instructed to

FARHANG & MEDCOFF
ATTORNEYS

00667002.2

- 4 -

1   do).  Soon thereafter, Tacke himself admitted he had crossed the line with this RN and that

2   he should apologize.   Seizing the opportunity to address Tacke's consistent improper

3   behavior toward women, Stringer and another SBH female employee indicated to Tacke

4   that his behavior was abusive, wholly inappropriate, and violated SBH policy and

5   applicable law.  Tacke, however, never apologized to this RN and held such statements

6   against Stringer and the other employee (whose employment with SBH also ended because

7   of the conduct of Tacke complained of herein).   To Stringer's knowledge, Tacke never

8   treated male employees in the way that he treated this RN, or women in general.

9        23.    On or about October 23, 2018, Tacke called Stringer into his office, and while

10   visibly angry, gave her a write up, based on a nurse under Stringer's supervision allegedly

11   reporting inaccurate patient census data from the night of October 21, 2018. Stringer looked

12   up the census data from October 21 and found it was in fact, correct.  Stringer asked Tacke

13   why a write up was appropriate when the census data was in fact accurate.   Tacke

14   interrupted Stringer, violently slammed his hand on his desk and yelled "I fucking told you"

15   in response to Stringer's question.

16        24.    Tacke then stood up from his desk and assumed a threatening posture.

17   Stringer was frightened by this and believed Tacke was going to hit her.  Tacke reached for

18   a bullet cartridge from his desk (which he often used as a prop to intimidate insubordinates;

19   Tacke claimed the bullet had been collected from a pile of dead bodies by a friend in the

20   military, suggesting that those who disagreed with Tacke would be in his crosshairs) and

21   held it in his hands as gesture of intimidation.  Out of fear and duress based on Tacke's

22   shocking and abusive behavior, Stringer signed the write up and left his office as quickly

23   as possible.

24        25.    Stringer is aware that other female SBH employees had similar interactions

25   with Tacke.  Stringer believes no male SBH employees had similar interactions with Tacke.

26        26.    On or about October 24, 2018, Tacke stated he did not want to work on

27   corrective action processes with four female SBH employees because they were, among

28   other things, "old and slow" women.

FARHANG & MEDCOFF
ATTORNEYS

00667002.2

- 5 -

27.   In juxtaposition, Tacke was supportive of male employees and would give them various opportunities to correct deficiencies and improve.

28.   On or about October 25, 2018, in a stunning change of behavior, Tacke told Stringer he would recommend her for a CEO-in Training Program.  Stringer deserved such an opportunity based on her exemplary work performance, but she remained baffled by Tacke's erratic and often hostile behavior towards her and other women.

29.   On or about October 26, 2018, Tacke walked into Stringer's office area and loudly, in front of others, asked "[i]s there a [name withheld] that works at night? There's a rumor going around that I was fucking [name withheld], and that [name withheld] said so."  Rather than allowing human resources to handle the situation, Tacke then personally confronted/scolded [name withheld] (a then-SBH employee, female, and alleged purveyor of the rumor).

30.   Later that day, in a crude and failed attempt to be humorous, Tacke stated that "I'd never want anyone to think I was fucking [name withheld]."  Tacke's statement was meant to demean [name withheld], her physical appearance, and women in general.

31.   On or about October 29, 2018, while Stringer was at a doctor's appointment, Tacke held a staff meeting, where he stated that there were rumors going around about him, that SBH had a toxic culture, and that people were going to get "fucking fired."  Later that same day, Carpentier asked Stringer if she was aware of any rumors persisting at the time regarding Tacke, to which Stringer replied she had not been until Tacke raised the issue a few days back.  Critically, Stringer indicated to Carpentier that she hoped the rumors were not true and that, if they were, such conduct was wholly inappropriate and illegal.

32.   Later that same day, members of the nighttime nursing staff approached Stringer and told her they had recently heard "sex noises" coming from Tacke's office. When two members of the staff had gone to investigate, they saw Tacke and a female SBH employee leaving Tacke's office around 2 a.m. looking "disheveled."

33.   On or about October 30, 2018, an SBH employee spoke with Stringer and warned her that Tacke was "intimidated" by her and that Tacke did not like that he could

00667002.2

FARHANG & MEDCOFF
—— ATTORNEYS ——

not make Stringer, a woman, cry.  This employee warned Stringer that Tacke would continue to try to damage Stringer, assert his dominance over her because she is female, and try to make her cry.  Stringer is not aware of any such interactions or intentions directed at similarly situated male employees.

34.    On or about October 31, 2018, Tacke called Stringer into his office. Carpentier was present and Tacke stated he wanted to discuss the write up Stringer received on October 23.  Tacke blamed Stringer for another allegedly incorrect patient census taken after October 23.  Tacke then terminated Stringer's employment.  When Stringer offered options other than termination, Tacke declined, stating that Stringer was "contributing to a toxic culture", which was untrue.

35.    Throughout his tenure as CEO of SBH, Tacke has personally directed the termination of at least 7 women.  During that period, Tacke has not terminated the employment of any men, including those who have committed acts deserving of such treatment.

36.    Tacke's termination of Stringer's employment was in retaliation for her consistent efforts, throughout her interactions with Tacke, to redirect him and to bring him into compliance with SBH policies and law including with regard to his treatment of women.  In acting as complained of herein and as may be further discovered through this litigation, in retaliating against Stringer, Tacke acted purposefully, with malice, and with an evil hand guided by an evil mind to damage Stringer.

37.    At all times relevant, Carpentier and SBH were aware of Tacke's improper, unprofessional conduct and his poor treatment of women.  Carpentier observed such conduct herself and had such conduct reported to her by various women.  Stringer understands Carpentier tried to make changes or improvements, but was purposefully thwarted by SBH, despite its knowledge of Tacke's conduct.

38.    On or about November 21, 2018, Stringer received several text messages from SBH's former Director of Nursing, Corey Glasford ("Glasford"), who was attempting to obtain information regarding Tacke's rumored sexual interactions with another SBH

00667002.2

FARHANG & MEDCOFF
ATTORNEYS

1   employee. Glasford noted that Tacke blamed Stringer for such rumors and that Tacke said

2   Stringer brought toxicity to the SBH workplace.

3       39.   Tacke, in his capacity as SBH's CEO, made these comments not only to

4   defame Stringer, damage her professional reputation, and prevent her from securing

5   potential employment with Glasford, he did so in retaliation for Stringer's opposition to

6   Tacke's unlawful conduct.

7       40.   Upon information and belief, Tacke, in his capacity as SBH's CEO, made

8   similar defamatory comments to other third parties and made it very difficult, if not

9   impossible, for Stringer to mitigate her damages.

10  ## COUNT I – VIOLATION OF TITLE VII/ACRA

11  (Against SBH)

12      41.   Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, et

13  seq. ("Title VII"), makes it an unlawful employment practice under federal law for an

14  employer to discriminate against any individual with respect to compensation, terms,

15  conditions, or privileges of employment, because of such individual's race, color, religion,

16  sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Similarly, the Arizona Civil Rights Act,

17  codified at A.R.S. § 41-1461, et seq. (the "ACRA"), also makes the foregoing unlawful

18  under Arizona law.

19      42.   Defendants' conduct complained of herein violates both Title VII and the

20  ACRA.

21      43.   Stringer is female and thus a member of a protected class under Title VII and

22  the ACRA due to her sex.

23      44.   Stringer was an excellent employee, whom Tacke stated he would

24  recommend for a CEO training program less than a week prior to the termination of her

25  employment.

26      45.   Tacke terminated Stringer's employment Plaintiff because of his animosity

27  towards women, especially women in positions of power who attempted to reign in Tacke's

28  eccentric and inappropriate behavior.   This termination occurred despite Plaintiff's

FARHANG & MEDCOFF
——— ATTORNEYS ———

00667002.2

- 8 -

1   exemplary employment and performance record.

2       46.    As set forth in further detail elsewhere herein, Tacke and SBH treated Stringer

3   and women in general far worse than similarly situated male employees.

4       47.    Tacke, a CEO who regularly flouts both SBH policy and applicable law, has

5   had the continued and unwavering support of SBH because he is male (as do other similarly

6   situated males), while high-performing management or supervisory-level female

7   employees, such as Stringer, are harshly disciplined and considered disposable.

8       48.    Stringer subjectively perceived her workplace environment to be offensive,

9   hostile, and abusive, and any objective, reasonable person would agree.

10      49.    The sexually hostile work environment Stringer was exposed to was

11  permeated with discriminatory intimidation and sexual overtones, was intolerable, and

12  severe.  The hostile acts and environment Stringer faced were so pervasive, indeed she felt

13  their effects on a daily basis, such that Stringer's conditions of employment were negatively

14  altered, and such that any reasonable person would consider same abusive and utterly

15  unacceptable.

16      50.    Tacke berated women, denigrated them for their age and appearance, applied

17  higher standards to them, and physically intimidated them.  This abusive behavior was both

18  severe and pervasive.

19      51.    The discrimination Stringer and other women faced because of their sex was

20  purposeful, calculated, and intended to keep Stinger from advancing or enjoying a peaceful

21  and welcoming work environment.

22      52.    Defendants' unlawful treatment of Stringer caused her significant damage in

23  an amount to be proven at trial.  Stinger is entitled to all damages recoverable under Title

24  VII and the ACRA including, without limit, those damages arising from wages and benefits

25  not paid for discriminatory reasons, emotional distress and mental anguish, inconvenience,

26  plus interest thereon, and attorneys' fees and costs incurred herein and otherwise incurred

27  by Stringer in seeking to vindicate her rights.

28      53.    Defendants' unlawful treatment of Stringer was gross, wanton, malicious,

FARHANG & MEDCOFF
——— ATTORNEYS ———

00667002.2

- 9 -

1  oppressive, and done with spite, ill will, and reckless indifference to Stringer's protected

2  rights. Further, Defendants' conduct evinces an evil hand guided by an evil mind. As a

3  result, Defendants are liable to Stringer for punitive damages, in addition to all other

4  damages, in an amount to be proven at trial.

5      54.    Stringer satisfied all legal requirements, including the administrative

6  processes required under federal and state law, to bring these claims.

7              **COUNT II – RETALIATION IN VIOLATION OF TITLE VII/ACRA**

8                                    (Against SBH)

9      55.    Stringer incorporates herein by this reference each and every preceding

10  allegation as if fully set forth herein.

11      56.    Stringer complained to SBH, through Carpentier, regarding Tacke's improper

12  treatment of women, his discrimination against women, and the hostile work environment

13  he created for women.

14      57.    Stringer complained to Tacke himself that his conduct toward and treatment

15  of women was improper and unlawful.

16      58.    Stringer's complaints to SBH, Tacke, and Carpentier were activity protected

17  under law, including under Title VII and the ACRA.

18      59.    SBH and Tacke retaliated against Stringer because she engaged in the

19  protected activity intended to vindicate her rights, and those of other females, under law

20  including under Title VII and the ACRA.

21      60.    SBH and Tacke retaliated against Stringer as set forth elsewhere herein

22  including, without limit, by terminating her employment and defaming her to third parties.

23      61.    Defendants' unlawful treatment of Stringer caused her significant damage in

24  an amount to be proven at trial. Stringer is entitled to all damages recoverable under title

25  VII and the ACRA for retaliation including, without limit, those damages arising from

26  wages and benefits not paid for discriminatory reasons, emotional distress and mental

27  anguish, inconvenience, plus interest thereon, and attorneys' fees and costs incurred herein

28  and otherwise incurred by Stringer in seeking to vindicate her rights.

FARHANG & MEDCOFF
——— ATTORNEYS ———

00667002.2

- 10 -

62.   Defendants' unlawful treatment of Stringer was gross, wanton, malicious, oppressive, and done with spite, ill will, and reckless indifference to Stringer's protected rights. Further, Defendants' conduct evinces an evil hand guided by an evil mind. As a result, SBH is liable to Stringer for punitive damages, in addition to all other damages, in an amount to be proven at trial.

63.   Stringer satisfied all legal requirements, including the administrative processes required under state law, to bring these claims.

## COUNT III – DEFAMATION

(Against all Defendants)

64.   Stringer incorporates herein by this reference each and every preceding allegation as if fully set forth herein.

65.   Tacke, acting in his capacity as SBH's CEO, made untrue, defamatory statements regarding Stringer to various third parties.

66.   For example, Tacke defamed Stringer when he falsely indicated to third parties that she was unprofessional and/or when he indicated that Stringer had started and/or perpetuated unsavory rumors. All comments, known and unknown to Stringer at this time, made by Tacke that reflected negatively upon Stringer were either false, made with reckless disregard for their falsity, and or were negligent.

67.   Tacke's false representations/publications regarding Stringer severely damaged her reputation and goodwill in the community. For example, Tacke's comments made it difficult, if not impossible, for Stringer to obtain employment financially comparable to her employment with SBH. Further, such comments made it difficult for Stringer to obtain immediate employment.

68.   Tacke's/SBH's defamation of Stringer was done with ill-will, spite, and malice such that an award of punitive damages against Defendants is appropriate.

## REQUESTED RELIEF

**WHEREFORE,** Stringer respectfully requests that the Court:

a)   Enter judgment for Stringer and against Defendants on all counts;

- 11 -

FARHANG & MEDCOFF
ATTORNEYS

1      b)     Award Stringer all recoverable damages, in an amount to be proven at trial;

2      c)     Award Stringer her taxable costs and reasonable attorneys' fees incurred
3 during her efforts to resolve these disputes prior to filing this lawsuit, and such costs and
4 attorneys' fees incurred herein, pursuant to 42 U.S.C. § 2000e-5(k), A.R.S. § 41-1481(J)
5 and any other applicable legal right/provision;

6      d)     Award Stringer punitive and/or exemplary damages on all claims under
7 which such damages are available under law in an amount to be determined at trial;

8      e)     Award Stringer pre- and post-judgment interest at the highest rate allowed
9 by law; and

10     f)     Grant Stringer any other relief that the Court deems just and proper under
11 circumstances.

12      DATED this 29th day of April 2020.

FARHANG & MEDCOFF

By /s/Roberto C. Garcia
Roberto C. Garcia
David M. Tangren
Attorneys for Plaintiff

FARHANG & MEDCOFF
ATTORNEYS

00667002.2

- 12 -

PERSON/ATTORNEY FILING: Roberto C Garcia
MAILING ADDRESS: 4801 E. Broadway Blvd. Suite 311
CITY, STATE, ZIP CODE: Tucson, AZ 85711
PHONE NUMBER: (520) 214-2000
E-MAIL ADDRESS: rgarcia@farhangmedcoff.com
[ ☐ ] REPRESENTING SELF, WITHOUT AN ATTORNEY
(IF ATTORNEY) STATE BAR NUMBER: 026246, Issuing State: AZ

FILED
Gary Harrison
CLERK, SUPERIOR COURT
3/17/2020 5:30:23 PM
BY: JAMES R. ORR /S/
DEPUTY

Case No. C20201353
HON. LESLIE MILLER

### ARIZONA SUPERIOR COURT, PIMA COUNTY

Mindy Stringer
Plaintiff(s),

V.

Sonora Behavioral Health Hospital,
LLC, et al.
Defendant(s).

CASE NO: _____

**RULE 102(a) FASTAR CERTIFICATE**

The undersigned certifies that he or she knows the eligibility criteria set by FASTAR Rule 101(b) and certifies that this case:

**(NOTE – YOU MUST CHECK ONE OF THE BOXES BELOW OR THE CLERK WILL NOT ACCEPT THIS FORM.)**

☐ **DOES** meet the eligibility criteria established by Rule 101(b); or

☒ **DOES NOT** meet the eligibility criteria established by Rule 101(b).

Dated: _____

Roberto C Garcia /s/ _____
SIGNATURE

FILED
Gary Harrison
CLERK, SUPERIOR COURT

5/21/2020 8:58:12 AM

BY: ALAN WALKER /S/
DEPUTY

Case No. C20201353
HON. LESLIE MILLER

# FARHANG & MEDCOFF

—————— ATTORNEYS ——————

4801 East Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.214.2000
F: 520.214.2001

Roberto C. Garcia (#026246) (PAN 66152)
rgarcia@farhangmedcoff.com

David Tangren (#034527) (PAN 67127)
dtangren@farhangmedcoff.com

Attorneys for Plaintiff Mindy Stringer

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| MINDY STRINGER, an unmarried person,<br><br>    Plaintiff,<br><br>    v.<br><br>SONORA BEHAVIORAL HEALTH HOSPITAL, LLC, a Delaware limited liability company; and MICHAEL TACKE and JOHN/JANE DOE TACKE, a married couple,<br><br>    Defendants. | Case No. C20201353<br><br>**APPLICATION FOR ENTRY OF DEFAULT**<br><br>(Assigned to the Honorable Leslie Miller) |

Plaintiff Mindy Stringer, by and through undersigned counsel and pursuant to Ariz. R. Civ. P. 55(a), hereby submits this Application for Entry of Default against Defendant Sonora Behavioral Health Hospital, LLC ("SBHH") only.

On April 30, 2020, Defendant Sonora Behavioral Health Hospital, LLC was served with a Summons, First Amended Complaint, and a copy of the Rule 102(A) Fastar Certificate in this action. Process Server Bill Bilyk perfected service upon SBHH, as confirmed by that certain Rule 4(g) Affidavit of Service attached hereto as Exhibit 1. SBHH failed to respond or otherwise plead within 20 days of being served, as provided under the Rules.

FARHANG & MEDCOFF
—————— ATTORNEYS ——————

00672694.1

A current mailing address for Defendant SBHH is as follows:

Sonora Behavioral Health Hospital, LLC
ATTN: Statutory Agent
c/o CT Corporation System
3800 N. Central Avenue, Suite 460
Phoenix, Arizona 85012

Plaintiff may be represented in this action or in a related matter by the following attorney:

Mark W. Peters
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219

SBHH is not a natural person and not in the military service.  Default against SBHH should be entered.

DATED this 21st day of May 2020.

FARHANG & MEDCOFF

By /s/Roberto C. Garcia
Roberto C. Garcia
David M. Tangren
Attorneys for Plaintiff

FARHANG & MEDCOFF
—— ATTORNEYS ——

00672694.1

- 2 -

1    FILED via TurboCourt this
     21st day of May 2020 with:
2
3    Clerk of the Court
     Pima County Superior Court
4
5    COPY served via First-Class U.S. Mail
     this 21st day of May 2020 upon:
6
7    Sonora Behavioral Health Hospital, LLC
     ATTN: Statutory Agent
8    c/o CT Corporation System
9    3800 N. Central Avenue, Suite 460
     Phoenix, Arizona 85012
10
11   Mark W. Peters
     Waller Lansden Dortch & Davis, LLP
12   511 Union Street, Suite 2700
     Nashville, Tennessee 37219
13
14
     /s/ Liza Taylor
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FARHANG & MEDCOFF
—— ATTORNEYS ——

00672694.1

- 3 -

# EXHIBIT 1

| Attorney or Party without Attorney:<br>ROBERTO C. GARCIA (#026246)<br>FARHANG & MEDCOFF, PLLC<br>4801 EAST BROADWAY SUITE 311<br>TUCSON , AZ 85711<br>Telephone No: (520) 790-5433 | For Court Use Only<br>GARY L. HARRISON<br>CLERK 3 COURT<br>**5·1·2020**<br>20 MAY -1 PM 43 42 |
|---|---|
| Attorney For:  Plaintiff | Ref. No. or File No.:  3339-003 | S. MAY, DEPUTY CLERK |

Insert name of Court, and Judicial District and Branch Court:
PIMA COUNTY SUPERIOR COURT

Plaintiff:  MINDY STRINGER, AN UNMARRIED PERSON
Defendant:  SONORA BEHAVIORAL HEALTH HOSPITAL, LLC, A DELAWARE LIMITED LIABILITY COMPANY

| AFFIDAVIT OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number:<br>C20201353 |
|---|---|---|---|---|

1. *At the time of service I was at least 21 years of age and not a party to this action.*

2. I served copies of the
   SUMMONS; FIRST AMENDED COMPLAINT; RULE 102(A) FASTAR CERTIFICATE

3. *a. Party served:*   SONORA BEHAVIORAL HEALTH HOSPITAL, LLC, BY SERVICE UPON ITS STATUTORY AGENT, CT CORPORATION SYSTEM
   *b. Person served:*   Scott Whaley

4. *Address where the party was served:*   3800 N Central Ave #460, Phoenix, AZ 85012

5. *I served the party:*
   a. by substituted service.   On: Thu, Apr 30 2020 at: 10:03 AM by leaving the copies with or in the presence of:
      Scott Whaley, Clerk , Caucasian , Male , Age: 40's , Hair: Black , Eyes: Brown , Height: 6' , Weight: 200 lbs ,

   (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.
   (b) I received this subpoena for service on: Wed, April, 29, 2020

   Service: $26.25, Mileage: $24.00, Affidavit: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $60.25

   I Declare under penalty of perjury under the laws of the State of
   Arizona that the foregoing is true and correct.

6. Person Executing:
   *a.* Bill Bilyk MC-8749, Maricopa County;
   *b.* FIRST LEGAL
      · 3737 North 7th. Street Suite 209
      · PHOENIX, AZ 85014
   *c.* (602) 248-9700

   04/30/2020                                 ฿. ฿ι
   *(Date)*                                    *(Signature)*

7. *STATE OF ARIZONA, COUNTY OF MARICOPA Subscribed and sworn to (or affirmed) before this 30 day of April, 2020 by*
   *Bill Bilyk (MC-8749, Maricopa County) proved to me on the basis of satisfactory evidence to be the person who appeared before me.*

                                              *(Notary Signature)*

BRYAN BLAIR
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
COMMISSION # 583468
MY COMMISSION EXPIRES
APRIL 29, 2023

**FL** FIRSTLEGAL                    AFFIDAVIT OF
                                       SERVICE                              4507264
                                                                           (35184117)

# ⊡ Davis Miles
## McGuire Gardner

40 E. Rio Salado Parkway, Suite 425
Tempe, AZ  85281
Telephone:  (480) 733-6800
Fax: (480) 733-3748
efile.dockets@davismiles.com
David W. Williams, State Bar No. 022764
dwilliams@davismiles.com

*Attorney for Defendants*
*Sonora Behavioral Health Hospital, LLC*
*and Michael Tacke*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF PIMA**

| | |
|---|---|
| MINDY STRINGER,<br><br>        Plaintiff,<br><br>vs.<br><br>SONORA BEHAVIORAL HEALTH HOSPITAL, LLC, MICHAEL TACKE and JOHN/JANE DOE TACKE,<br><br>        Defendants. | CASE NO. C20201353<br><br><br>**DEFENDANT SONORA BEHAVIORAL HEALTH HOSPITAL, LLC'S ANSWER TO THE COMPLAINT** |

Defendant Sonora Behavioral Health Hospital, LLC ("the Hospital") makes the following answer and asserts the following affirmative and other defenses in response to the Complaint of Plaintiff Mindy Stringer ("Plaintiff").

## **FIRST DEFENSE**

The Complaint must be dismissed to the extent that it fails to state a claim upon which relief can be granted.

4811-6181-3693.1

1

## SECOND DEFENSE

The Complaint must be dismissed to the extent that any allegation made or sought to be made against the Hospital for any purported unlawful act, omission, or employment practice is barred by the applicable statute of limitations.

## THIRD DEFENSE

The Complaint must be dismissed because all employment actions taken by the Hospital with respect to Plaintiff were justified, for good and just cause, within the exercise of legitimate management discretion and business judgment, for non-discriminatory business reasons, without regard to Plaintiff's sex, and were not willful, wanton, malicious, or done in a reckless manner.

## FOURTH DEFENSE

Without admitting any wrongdoing with respect to Plaintiff, any allegation of discrimination must be dismissed because Plaintiff unreasonably failed to take advantage of preventive and corrective opportunities provided by the Hospital or to otherwise avoid harm.

## FIFTH DEFENSE

Without admitting any wrongdoing with respect to Plaintiff, any allegation of discrimination or retaliation must be dismissed to the extent that the alleged discriminatory or retaliatory act(s) was neither committed nor ratified by persons acting on behalf of the Hospital or within the scope of their employment with the Hospital, and cannot otherwise be imputed to the Hospital.

## SIXTH DEFENSE

Plaintiff's claim for defamation must be dismissed to the extent any statement that forms the basis for such claim is true or was an opinion.

## SEVENTH DEFENSE

The Complaint must be dismissed to the extent that Plaintiff has failed to exhaust administrative preconditions and/or remedies prior to filing a civil action.

4811-6181-3693.1

2

**EIGHTH DEFENSE**

The Complaint must be dismissed to the extent that Plaintiff's claims are barred by the equitable doctrines of waiver, estoppel, unclean hands, or laches.

**NINTH DEFENSE**

The Complaint must be dismissed to the extent Plaintiff's claims or remedies are barred or limited by the doctrine of after-acquired evidence.

**TENTH DEFENSE**

Plaintiff's claims for alleged compensatory and punitive damages must be dismissed because she has failed to plead facts or law sufficient to support the availability of such damages.

**ELEVENTH DEFENSE**

Plaintiff's claims should be dismissed to the extent that she has failed to mitigate her alleged damages, or alternatively, has mitigated her alleged damages and is not entitled to the relief sought.

**TWELFTH DEFENSE**

The Hospital expressly reserves the right to modify, amend, or supplement its defenses following further discovery in this matter.

**THIRTEENTH DEFENSE**

Having asserted its affirmative and other defenses, the Hospital responds to the individually numbered paragraphs of the Complaint as follows:

1.      Upon information and belief, the Hospital admits the allegations of Paragraph 1.

2.      The Hospital admits that it is a Delaware limited liability company and denies the remaining allegations of Paragraph 2.

3.      Upon information and belief, the Hospital admits the allegations of the first sentence of Paragraph 3 and is without knowledge or information sufficient to form a belief regarding the remaining allegations of Paragraph 3 and therefore denies the same.

4811-6181-3693.1

3

4.     The Hospital admits that this Court has subject matter jurisdiction and denies the remaining allegations of Paragraph 4.

5.     The Hospital admits that venue is proper in this Court and denies the remaining allegations of Paragraph 5.

6.     The Hospital admits the allegations of Paragraph 6.

7.     The Hospital admits the allegations of Paragraph 7.

8.     The Hospital denies the allegations in the first sentence of Paragraph 8.  The Hospital admits that Plaintiff was named as an "Employee of the Month" during her employment tenure.

9.     The Hospital admits the allegations of Paragraph 9.

10.    The Hospital denies the allegations of Paragraph 10.

11.    The Hospital denies the allegations of Paragraph 11.

12.    The Hospital denies the allegations of Paragraph 12.

13.    The Hospital admits that, near the beginning of Mr. Tacke's employment with the Hospital, Mr. Tacke assisted a staff member in physically restraining a patient and that Mr. Tacke completed the Hospital's Handle with Care training thereafter.  The Hospital denies the remaining allegations of Paragraph 13.

14.    The Hospital denies the allegations of Paragraph 14 to the extent Plaintiff alleges that it or Mr. Tacke treated male employees more favorably than female employees.

15.    The Hospital denies the allegations in the last sentence of Paragraph 15 and is without knowledge or information sufficient to form a belief regarding the remaining allegations of Paragraph 15 and therefore denies the same.

16.    The Hospital admits that Mr. Krepps was the Director of Clinical Services position in August 2018 and denies the remaining allegations of Paragraph 16.

17.    The Hospital denies the allegations of Paragraph 17.

18.    The Hospital denies the allegations of Paragraph 18.

19.    The Hospital denies the allegations of Paragraph 19.

20.     The Hospital denies the allegations of Paragraph 20 to the extent Plaintiff alleges that it or Mr. Tacke treated male employees more favorably than female employees.

21.     The Hospital admits that Mr. Tacke's office had window blinds and denies the remaining allegations of Paragraph 21.

22.     The Hospital denies the allegations of Paragraph 22.

23.     The Hospital admits that Mr. Tacke issued a Performance Improvement Plan to Plaintiff on October 24, 2018 for reporting inaccurate patient census data on October 20, 2018 and met with Plaintiff to discuss her errors and that Mr. Tacke told Plaintiff during this meeting that he expected her to report accurate census data in the future and that failure to do so may result in further disciplinary action, up to and including termination.   The Hospital denies the remaining allegations of Paragraph 23.

24.     The Hospital admits that Plaintiff signed the Performance Improvement Plan and denies the remaining allegations of Paragraph 24.

25.     The Hospital denies the allegations of Paragraph 25 to the extent Plaintiff alleges that it or Mr. Tacke treated male employees more favorably than female employees.

26.     The Hospital denies the allegations of Paragraph 26.

27.     The Hospital denies the allegations of Paragraph 27 to the extent Plaintiff alleges that it or Mr. Tacke treated male employees more favorably than female employees.

28.     The Hospital admits that Mr. Tacke told Plaintiff that he would consider recommending her for a CEO-in-Training Program in an attempt to motivate Plaintiff to improve her work performance and denies the remaining allegations of Paragraph 28.

29.     The Hospital denies the allegations of Paragraph 29.

30.     The Hospital denies the allegations of Paragraph 30.

31.     The Hospital denies the allegations of Paragraph 31.

32.     The Hospital denies that that there were any "sex noises" coming from Mr. Tacke's office and that Mr. Tacke and a female SBH employee left Mr. Tacke's office around 2 a.m. looking "disheveled" and is without knowledge or information sufficient to

4811-6181-3693.1

5

form a belief regarding the remaining allegations of Paragraph 32 and therefore denies the same.

33.    The Hospital is without knowledge or information sufficient to form a belief regarding the allegations of Paragraph 33 and therefore denies the same.

34.    The Hospital admits that Mr. Tacke terminated Plaintiff's employment based upon his honest and good faith belief that she had failed repeatedly to submit correct patient census data and denies the remaining allegations of Paragraph 34.

35.    The Hospital admits that Mr. Tacke terminated both women and men during his tenure as the Chief Executive Officer and denies the remaining allegations of Paragraph 35.

36.    The Hospital denies the allegations of Paragraph 36.

37.    The Hospital denies the allegations of Paragraph 37.

38.    The Hospital is without knowledge or information sufficient to form a belief regarding the allegations of Paragraph 38 and therefore denies the same.

39.    The Hospital denies the allegations of Paragraph 39.

40.    The Hospital denies the allegations of Paragraph 40.

41.    The Hospital admits that Title VII and the ACRA make employment discrimination on the basis of race, color, religion, sex, or national origin unlawful and denies that Plaintiff is entitled to relief under any legal theory.

42.    The Hospital denies the allegations of Paragraph 42.

43.    The Hospital admits the allegations of Paragraph 43.

44.    The Hospital denies that Plaintiff was an "excellent employee" and admits that Mr. Tacke told Plaintiff that he would consider recommending her for a CEO-in-Training Program in an attempt to motivate Plaintiff to improve her work performance.

45.    The Hospital denies the allegations of Paragraph 45.

46.    The Hospital denies the allegations of Paragraph 46.

47.    The Hospital denies the allegations of Paragraph 47.

4811-6181-3693.1

48. The Hospital denies the allegations of Paragraph 48.

49. The Hospital denies the allegations of Paragraph 49.

50. The Hospital denies the allegations of Paragraph 50.

51. The Hospital denies the allegations of Paragraph 51.

52. The Hospital denies the allegations of Paragraph 52 and states that Plaintiff is not entitled to relief under any legal theory.

53. The Hospital denies the allegations of Paragraph 53.

54. The Hospital denies the allegations of Paragraph 54.

55. The Hospital incorporates by reference its responses to Paragraphs 1-54.

56. The Hospital denies the allegations of Paragraph 56.

57. The Hospital denies the allegations of Paragraph 57.

58. The Hospital denies the allegations of Paragraph 58.

59. The Hospital denies the allegations of Paragraph 59.

60. The Hospital denies the allegations of Paragraph 60.

61. The Hospital denies the allegations of Paragraph 61 and states that Plaintiff not entitled to relief under any legal theory.

62. The Hospital denies the allegations of Paragraph 62.

63. The Hospital denies the allegations of Paragraph 63.

64. The Hospital incorporates by reference its responses to Paragraphs 1-63.

65. The Hospital denies the allegations of Paragraph 65.

66. The Hospital denies the allegations of Paragraph 66.

67. The Hospital denies the allegations of Paragraph 67.

68. The Hospital denies the allegations of Paragraph 68.

69. The Hospital denies that Plaintiff has stated a viable claim for any relief requested in the Complaint.

70. The Hospital denies all allegations in the Complaint not specifically admitted or denied herein.

4811-6181-3693.1

7

WHEREFORE, having fully answers the allegations of Paragraphs 1-69 of the Complaint and asserted its affirmative defenses thereto, the Hospital prays that the Complaint be dismissed, with prejudice, that it be awarded costs, expenses, and attorneys' fees in the amount and manner permitted by applicable law, and that the Court award such other and further relief to which it is entitled.

Dated this 28th day of May 2020.

DAVIS MILES MCGUIRE GARDNER, PLLC

/s/David W. Williams
David W. Williams
40 East Rio Salado Parkway, Ste. 425
Tempe, AZ 85281

ORIGINAL of the foregoing electronically filed this
28th day of May 2020, with:

Clerk of Court
Pima County Superior Court

COPY of the forgoing electronically delivered this
28th day of May 2020, to:

Hon. Leslie Miller
Pima County Superior Court

COPY of the foregoing emailed and mailed this
28th day of May 2020, to:

Roberto C. Garcia
rgarcia@farhangmedcoff.com
David Tangren
dtangren@farhangmedcoff.com
Farhang & MedCoff 4801 East Broadway Boulevard, Suite 311
Tucson, AZ 85711
*Attorneys for Plaintiff Mindy Stringer*

/s/Stephanie DeBuhr

4811-6181-3693.1

8